IN THE OREGON TAX COURT

Jack MOORE
and David Weber
*v.*
DEPARTMENT OF REVENUE
(TC 3198)

David E. Carmichael, Eugene, represented plaintiffs.

Marilyn J. Harbur, Assistant Attorney General, Department of Justice, Salem, appeared for defendant.

Decision for plaintiffs rendered September 21, 1992.

### CARL N. BYERS, Judge.

Plaintiffs appeal the January 1, 1988, assessed value of their pizza parlor. The subject property is located south of the Marys River in Corvallis. The 1.3-acre site has approximately 266 feet of frontage on Southwest Third Street. Access to the property is from either the north or south side on Twin Oaks Circle.

The main portion of the building, containing approximately 7,000 square feet, was constructed for restaurant use

in 1970. The parties were uncertain whether it was originally constructed as a pizza restaurant. They did know that prior to plaintiffs' occupancy, it was also used as a pizza restaurant. Plaintiffs purchased the property in 1983 for $348,000. In 1986, plaintiffs added an indoor children's play area of 2,632 square feet at the cost of $97,560, giving plaintiffs a total cost of $445,560.[1]

Defendant assessed the land at $127,410. Although plaintiffs' complaint alleged the same value, plaintiffs' appraiser found the value to be $119,000. The assessed value is equal to $2.25 a square foot. The court finds that the $2.25 per square foot value is supported by the evidence and that the total land value is $127,410.

■     The building as configured dictates that the highest and best use of the property is its existing use. Plaintiffs' appraiser testified that the subject neighborhood is composed of industrial and older residential properties and, therefore, is not a good location for a restaurant. As plaintiffs point out, there are no other restaurants around. Although Southwest Third Street has a high traffic volume, it is not the kind that brings business to plaintiffs' restaurant. Defendant disagreed. Defendant's appraiser believes the property is a suitable location for a restaurant. However, defendant's appraiser adjusted its land sales approximately 50 percent from the Northwest Ninth Street area in Corvallis, which defendant readily acknowledges is a better location. The court finds that the subject property is not a good location for a restaurant. The location affects not only the land value but all other aspects of the property's worth.

## COST APPROACH

Both appraisers agreed that the restaurant building had a 35-year economic life. Plaintiffs' appraiser calculated a reproduction cost new of $540,059. Based on the fact that the main portion of the building was 18 years old and the children's play area was two years old, he used a 14-year blended

---

[1] Defendant claims the original building contained 7,060 square feet and the addition has 2,632 square feet for a total of 9,692 square feet but defendant also shows 7,452 square feet and 2,800 square feet in its cost calculations. The overall dimensions of the building are 145 feet by 70 feet, which equals 10,150 square feet, less the covered entry of 8 feet by 65 feet (520 square feet) gives a result of 9,630 square feet total.

age to arrive at 40 percent depreciation for the building. Deducting $192,149 for general depreciation, plus $35,000 for deferred maintenance, gave him an indicated value of $312,910 for the improvements.

Defendant assigned the main area a 10-year effective age, which, based on the Marshall-Stevens valuation tables, resulted in only 15 percent depreciation. Defendant's appraiser gave no explanation of the 10-year effective age other than judgment. His appraisal report indicates that determination of effective age is "a matter of judgement [sic], taking all factors into consideration."

The evidence shows that the original fire pit or fireplace still exists in the center of the dining room. The property has the same basic exterior and only the play area is new construction. The property is in need of maintenance and has had no particular remodeling or upgrading to extend the life of the property. The 15 percent depreciation allowed by defendant is the equivalent on a straight-line basis of 5.25 years of actual age. In effect, this means defendant anticipates the property has a remaining economic life of almost 30 years.

The court finds that due to its location and history, the property should be depreciated on a straight-line basis based on its actual age. Applying that conclusion to defendant's reproduction cost of $497,854 results in an indicated value of $298,712 for the building. To that must be added the $35,730 defendant calculated for the site improvements, for a total of $334,442.

## SALES APPROACH

Plaintiffs use what is termed "reentry" comparable sales. These are properties originally constructed for specific restaurants which later went out of business. The properties were then sold or leased to a different restaurant business. This approach is very specific and fits the subject's highest and best use well. It is clear that other uses of the subject property would require modifications. Neither party submitted any evidence of the costs required to adapt the property to other possible uses. Sales of such restaurant properties provide a better indication of the subject's market value than sales of nonrestaurant properties.

While plaintiffs' comparable sales all appear generally comparable, they extend almost the length of the state. The court is not persuaded that the area stretching from Klamath Falls to Lake Oswego constitutes one market area. Only one of plaintiffs' comparable sales was in the City of Corvallis. Plaintiffs' appraiser conceded that he was "reaching" to find any sales comparable to the subject.

■ Defendant's comparable sales approach was also weak. Four of defendant's seven sales were located in the City of Salem. Of the three properties located in Corvallis, none were restaurants. Defendant's sale No. 5 was the same sale used by plaintiffs. This was a restaurant property which sold for $600,000 in June, 1987. This sale involved excess land almost equal to one-third of the purchase price. Also, its location is superior to that of the subject property. The appraisers agree that the excess land had a value of $7 per square foot compared to the $2.25 per square foot for the subject. After reviewing the evidence, the court finds that it can give little or no weight to the comparable sales approach.

## INCOME APPROACH

■ Plaintiffs' appraiser testified that restaurants are high-risk businesses which fit into two separate sectors of the property market. The first sector includes those properties which are built to suit the tenant. These properties demand higher rents and produce approximately a 12 percent return. The other sector contains reentry properties. These properties generally entail higher risk because they have already experienced one business failure. When such properties are inhabited by new restaurants, the reentry tenants pay a lower rent in view of the higher risk involved.

Plaintiffs' comparable rents range from 41 cents to 63 cents per square foot per month. Plaintiffs' appraiser adopted 48 cents per square foot per month. When multiplied by 9,630 square feet, it results in $55,464 annual gross income. Deducting 10 percent for vacancy loss and management fees gives a net income of $49,918.

Defendant's appraiser used seven rent comparables with a range of 71 cents per square foot to $1.60 per square foot per month. Recognizing that most of these properties were in better locations than the subject, he adjusted them 5

to 10 percent for location. Defendant used 70 cents per square foot for the main portion of the building (7,452 square feet) and 35 cents per square foot for the 2,240 square feet of the play area, giving a total of $6,000 per month or $72,000 gross annual income. After deducting vacancy and management expenses, he arrived at a net income of $62,856.

The court finds that defendant did not make adequate adjustment for the better locations of its comparable rents. Based on the evidence, the rent should be adjusted significantly for location and other factors. For example, one of plaintiffs' rent comparables is Pietro's Pizza, located on Northwest Ninth Street. In admittedly a better location, that property rented in July, 1988, for 45 cents per square foot. At the same time, the court feels that plaintiffs' appraiser ignored the higher rents. The court finds that an appropriate rental rate is 50 cents per square foot per month. When this amount is applied to the 9,630 square feet of improvements, it results in a gross annual income $57,780. Deducting 10 percent for vacancy and management gives a net annual income of $52,000.

The overall capitalization rates used by the parties were based on the ratio between the income and sales price of their comparable sales properties. Plaintiffs' capitalization rates range from 10.93 percent to 11.94 percent. Plaintiffs' appraiser selected 11.5 percent. Defendant's capitalization rates range from 8.7 percent to 12.4 percent and its appraiser selected 10.5 percent.

The court has some problem with plaintiffs' reasoning. Plaintiffs' appraiser reasoned that "build-to-suit" properties typically demand a 12 percent return on investment. He further testified that reentry properties incur more risk. However, he assigned a lower capitalization rate to the reentry properties. This seems inconsistent. If the data shows that "build-to-suit" properties demand a higher overall capitalization rate, it must mean they are viewed as having greater risk. Likewise, if reentry properties have a lower overall capitalization rate, the market must perceive them as having less risk. The court finds that either 10.5 percent to 11 percent would be an appropriate capitalization rate. Applying those rates to the net income of $52,000 results in an indicated value of $495,238 to $472,727.

## RECONCILIATION

Based on the court's analysis, the cost approach would give an indicated value of $335,000 for the improvements and $127,410 for the land, for a total of $462,410. The sales comparison approach is so weak that no valid indication can be drawn from that approach. The income approach indicates a value range of $472,727 to $495,238.

Although plaintiffs are conducting a successful pizza restaurant operation on the property, its history demonstrates that it is not a particularly good location. Unless the character of the neighborhood changes, which is unlikely, it is doubtful that any other restaurant operator would have great interest in the subject property. Based on all the evidence, the court finds that the true cash value of the subject property is $347,590 for the improvements, $127,410 for the land, for a total value of $475,000 as of January 1, 1988.

Judgment will be entered setting aside defendant's opinion and order and instructing the county officials to correct the rolls in accordance with this opinion.

Costs to neither party.